757 P.2d 1240

**Robert D. FREEMAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 16639.**

Court of Appeals of Idaho.

June 29, 1988.

Petition for Review Denied
Oct. 31, 1988.

*See Brazier v. Brazier,* 111 Idaho 692, 726 P.2d 1143 (Ct.App.1986); 24 AM.JUR.2d *Divorce and Separation* § 712 (1983).

**522**

Malcolm Dymkoski, Post Falls, for petitioner-appellant.

Jim Jones, Atty. Gen., Peter C. Erbland, Deputy Atty. Gen., for respondent.

SWANSTROM, Judge.

Robert Freeman pled guilty to two counts of lewd and lascivious conduct with a minor under the age of sixteen. Freeman later moved to withdraw his guilty plea and his motion was denied. Judgment was entered and consecutive sentences were imposed: an indeterminate term not to exceed twenty years on one count, and an indeterminate term not to exceed ten years on the other. On appeal this court upheld the judgment, including the sentences, in *State v. Freeman*, 110 Idaho 117, 714 P.2d 86 (Ct.App.1986).

While the former appeal was pending Freeman filed an application for post-conviction relief contending that he neither voluntarily nor intelligently entered his pleas of guilty. This allegation is based on the use by Freeman of prescription drugs at the time of entering the pleas. It was apparently agreed that the parties would await the outcome of Freeman's direct appeal before proceeding with an evidentiary hearing on the issue raised in the application for post-conviction relief. When the hearing was held, the judge denied any relief from the judgment and dismissed the application. Freeman again appealed.

In this appeal Freeman's arguments coalesce into the single issue of whether the district judge erred in failing to disqualify himself after admitting he could not set aside impressions formed earlier concerning the voluntariness of Freeman's pleas. For reasons which follow, we affirm.

The facts surrounding the guilty pleas and motion to withdraw were discussed in *State v. Freeman, supra.* At the hearing on Freeman's motion to withdraw his guilty pleas in the criminal prosecution, Freeman claimed to have no memory of entering the pleas and little recall of the surrounding period of time. The hearing revealed no arguable basis for the claimed loss of memory and resulted in the court finding that the pleas had been made freely, voluntarily and knowingly.

In his subsequent application for post-conviction relief, Freeman supported his allegations of memory loss with the previously untapped revelation that he had been taking the prescribed drug Ativan at the time of entering his pleas.[1] At the hearing on the application, the state and

1. The propriety of Freeman's application for post-conviction relief is itself subject to question. In both the motion to withdraw his pleas and his application for post-conviction relief, Freeman contends his pleas were not given knowingly and voluntarily. This argument presents the same legal issue in both proceedings. The state initially challenged Freeman's right to another attack on the issue of the voluntariness of the guilty pleas. Later, during the

post-conviction hearing, the state's attorney conceded that the effect of the use of Ativan was something outside the trial record so that the district court could, in the post-conviction relief proceedings, make a determination as to whether the voluntariness of the pleas had been affected by the taking of the drug. Freeman's piecemeal approach arguably presents "evidence of material facts, not previously presented and heard that require vacation of the conviction

Freeman presented evidence regarding Freeman's mental state during the time when the guilty pleas were entered. The judge heard conflicting expert testimony regarding the potential effects of Ativan. It was described on one hand as an anxiety reducer and mild sedative, but on the other hand as a drug that could significantly affect cognitive ability and the capacity to make informed decisions.

The judge who presided over this hearing was the same judge who had accepted the guilty pleas and who had conducted the hearing on the motion to withdraw the pleas. *See* I.C. § 19–4907. During the hearing on Freeman's application for post-conviction relief, the district judge made statements upon which Freeman now bases his claim of error.

I think you have correctly defined the issue as I perceive it here as to whether the Defendant voluntarily and knowingly and intelligently waived his right to go to trial and entered a plea of guilty. Now realistically how, in making that decision in this case, can I remove myself from the fact that I was in the proceeding on June 14th [1982, when Freeman pled guilty], participated in questioning and observation of the Defendant myself and formed some opinions from it.

. . . .

The Defendant, Mr. Freeman, has testified here today that he had no recollection and was confused of everything that was going on. My recollection of the meeting in the office that day, the morning the trial was to start, which lasted, I don't know, [an] hour and a half, two

hours, something like that, he was very much aware, he was very alert and he clearly understood the hard dilemma in which he found himself.

The district court's written findings included the following statements:

The undersigned was the trial judge who presided over all of the proceedings about which petitioner complains. It was the observation of the undersigned that defendant fully understood and comprehended, was alert, aware, able to perceive his peril, able to evaluate the testimony against him and suffered no impairment of any kind.

Freeman contends that these oral and written statements showed sufficient taint of the judge's impartiality that he should have disqualified himself from consideration of Freeman's application for post-conviction relief.

■ The state argues that Freeman's remedy was to move for the judge's disqualification. The state notes, correctly, that no motion for disqualification was ever made by Freeman. Freeman contends that such a motion, if made, would have been untimely. The rules in effect at the time required that such a motion be made within five days after service of notice setting the action for trial. Freeman also contends that the facts showing cause for disqualification were not known until the hearing itself when the district judge made his comments concerning the previous pleas.[2]

The record discloses that Freeman's counsel did voice a concern regarding the district judge's ability to be impartial, and

... in the interest of justice." I.C. § 19–4901(a)(4). Because the district court conducted an evidentiary hearing on Freeman's application and decided the issue raised on its merits, and because the matter has been fully briefed and argued, we will address the issue. Under the present language of I.C. § 19–4901(b), as amended in 1986, Freeman would be precluded from pursuing this type of repetitious litigation.

**2.** The Idaho Rules of Civil Procedure allow for a one-time "automatic" disqualification of a judge, aside from any disqualification for cause.

However, shortly before Freeman filed his application for post-conviction relief, Rule 40(d)(1) was amended to eliminate an automatic disqualification of a judge in a post-conviction proceeding if that same judge entered the judgment and sentence being challenged. Under the then-existing rule, Freeman had only five days to file his "for cause" disqualification motion after service of notice setting the action for trial. Effective November 1, 1987, a motion for disqualification *for cause* may be made at any time. I.R.C.P. 40(d)(2).

he did raise the question of possible disqualification at the hearing. We conclude that the failure of Freeman to file a written motion is not fatal to the presentation of his issue. We will therefore address the merits of the issue.

Initially we note that I.C. § 19–4907(a) provides that an application for post-conviction relief "shall be heard in, and before any judge of, the court in which the conviction took place." Generally, in this state, applications are heard by the same judge who issued the judgment of conviction and sentence. This practice of having the sentencing judge also handle the post-conviction relief proceeding is approved by our Supreme Court absent a showing either of actual bias or prejudice on the part of that judge. See *Sivak v. State*, 112 Idaho 197, 731 P.2d 192 (1987); *DeFord v. State*, 105 Idaho 865, 673 P.2d 1059 (1983); *State v. Bearshield*, 104 Idaho 676, 662 P.2d 548 (1983).[3]

As a general rule the issue of bias in connection with the disqualification of a judge is focused on the mental attitude or disposition of the judge toward a party to the litigation. The question raised is whether the neutrality of an impartial judge was in fact maintained in the proceeding. The alleged bias here is based upon the use by the judge of his previous findings and conclusions in his determination of Freeman's application.

■ When the sentencing judge heard Freeman's motion to withdraw his pleas in July, 1982, the judge listened to testimony of Freeman. Freeman testified extensively again that afternoon during the sentencing hearing. A month earlier when Freeman was scheduled to go to trial but decided to plead guilty to some of the charges, the judge observed Freeman in chambers and in open court. He talked to Freeman, heard Freeman's statements about the charges, about the proceedings, about witnesses and the victims, about his reasons for waiving a trial and pleading guilty, and about his attorney. These discussions were all on the record. During the July hearing, the judge made the following statements:

THE COURT: [I] would also state for the record conclusions and my own observations of Mr. Freeman, both at the proceedings on June 14th and prior thereto, the previous court proceedings. In all of those, to my observation, Mr. Freeman was well-oriented as to the proceedings. He seemed to understand exactly what the charges were. He seemed to comprehend and understand the questions which I addressed to him. His answers were direct, coherent, logical, responses to those questions.

Particularly, on June 14th, [I] observed that he seemed emotional, distressed; particularly, he seemed to want to avoid going to trial in any manner that would involve his daughter, . . . . And a motion was, in fact, addressed to the Court to exercise its discretionary powers to dismiss that charge involving his daughter.

It was only after the Court had denied that motion that Mr. Freeman did, in fact, decide to enter his plea of guilty; but, at all times, he seemed to fully understand the gravity of the charges, the overwhelming nature of the evidence that the prosecution had to present against him. He seemed to understand the peril that he faced; and while he did display, to my mind, a reluctance to come to grips with that and have to make a final decision about it, he seemed to fully understand what his options were, what was available to him, that he could or could not do.

Now, addressing myself to the motion today, as far as the one to set aside the

---

**3.** Other circumstances may call for a sentencing judge's disqualification from hearing applications for post-conviction relief. A judge who attempts to resolve disputed events stemming from an inadequate or wholly absent record of those events by reliance upon his own later recollection of those events as "evidence," places himself in the incompatible position of witness, judge and jury. See, e.g., *Tyler v. Swenson*, 427 F.2d 412 (8th Cir.1970); *Davis v. State*, 598 S.W.2d 582 (Mo.Ct.App.1980).

pleas on the basis that they were not knowingly, intelligently and voluntarily entered, I was of the opinion at the time, and I continue to be of the opinion, that the pleas were entered knowingly, intelligently, and voluntarily.

These statements were timely made, based on contemporaneous observations by an experienced trial judge; they were germane to the issues then before the judge. Obviously, they became a part of the record in the criminal case and they are part of the record in this appeal as well.

Accordingly, this is *not* a case where the judge, in the criminal prosecution, inadequately determined the voluntariness of the plea before accepting it and then, in subsequent post-conviction proceedings, undertook to rehabilitate the deficient record with his own recollections. *See, e.g., Halliday v. United States*, 380 F.2d 270 (1st Cir.1967), *aff'd on other grounds*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, *reh'g denied*, 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969) and *Davis v. State, supra;*[4] *see also* footnote 2, *supra.*

We do not agree with Freeman's argument that the judge's statements exhibited an improper predisposition which warranted disqualification. Freeman has not established that the statements exhibited an inability of the judge to rule impartially, on evidence presented, as to the voluntariness of the pleas.

The judge's statements in the post-conviction relief hearing were essentially a restatement of the observations he had made on the record in the criminal case when Freeman sought to withdraw his pleas. Although the proceedings were separate, the judge was not required to totally disregard his earlier findings. *Compare State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988). The judge may properly carry forward his findings and conclusions which were reached in the previous pro-

ceedings. Consideration by the judge of matters in the earlier proceedings, and familiarity with the totality of the facts and circumstances surrounding the case, are part of the economy of having post-conviction relief hearings before the same judge who presided at the original proceedings when the plea was entered. *See Coleman v. State*, 633 P.2d 624 (Mont.1981).

In conclusion, we hold the judge did not err in failing to disqualify himself. Accordingly, we affirm the order denying the application for post-conviction relief.

WALTERS, C.J., and BURNETT, J., concur.

---

4. *Halliday* was cited in *State v. Bearshield, supra,* and quoted extensively in Justice Bistline's dissent in *Deford v. State, supra.*